Raymond P. Boucher, State Bar No. 115364
  *ray@boucher.la*
Maria L. Weitz, State Bar No. 268100
  *weitz@boucher.la*
**BOUCHER LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel: (818) 340-5400
Fax: (818) 340-5401

John A. Yanchunis, *pro hac vice pending*
  *jyanchunis@forthepeople.com*
Marcio W. Valladares, *pro hac vice pending*
  *mvalladares@forthepeople.com*
Patrick A. Barthle II, *pro hac vice pending*
  *pbarthle@fortherpeople.com*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel: (813) 223-5505
Fax: (813) 222-2434

Paul R. Kiesel, State Bar No. 119854
  *kiesel@kiesel-law.com*
Jeffrey A. Koncius, State Bar No. 189803
  *koncius@kiesel-law.com*
Mariana Aroditis, State Bar No. 273225
  *aroditis@kiesel-law.com*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Tel: (310) 854-4444
Fax: (310) 854-0812

*Attorneys for Plaintiff Richard Quintero*
*and All Others Similarly Situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD QUINTERO, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY, a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.   5:15-cv-2530<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1. Breach of Express Warranty;<br>2. Violation of  15 U.S.C. § 2301;<br>3. Negligent Misrepresentation;<br>4. Violation of Cal. Bus. & Prof. Code § 17200, et seq.;<br>5. Violation of Cal. Bus. & Prof. Code § 17500;<br>6. Violation of Cal. Civ. Code § 1750, et seq.;<br><br>DEMAND FOR JURY TRIAL |

Plaintiff RICHARD QUINTERO ("Plaintiff"), by and through the undersigned counsel, brings this class action complaint against Defendant GENERAL MOTORS COMPANY ("GM") and DOES 1 through 10, inclusive, (collectively, "Defendants") on behalf of all persons in the United States who are current or former owners and/or lessees of model year 2014 GMC Sierra 1500 Series or Chevrolet Silverado 1500 pickup trucks ("Class Vehicles"). All allegations in this Complaint are based upon information and belief except for those allegations which pertain to Plaintiff, which are based upon Plaintiff's personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, the investigation conducted to date by Plaintiff and his counsel. Each allegation in this Complaint has evidentiary support or is likely to have evidentiary support upon further investigation and discovery.

## INTRODUCTION

1.      In or about July 2013, Plaintiff visited his local GMC dealership to purchase a new pickup truck. Plaintiff intended to purchase a 2013 model year GMC Sierra 1500. Upon reviewing the options available to him, Plaintiff realized the 2013 model's towing capacity was a mere 6,900 pounds, versus the 8,800-pound towing capacity and 14,400 pound Gross Combined Weight Rating[1] ("GCWR") advertised for the 2014 model. Relying on the advertised towing capacity and GCWR of the 2014 model, Plaintiff proceeded to purchase a 2014 GMC Sierra 1500 Crew Cab 5.3L V8 pickup truck. The 2014 GMC Sierra 1500 is mechanically identical in all relevant respects to the 2014 Chevrolet Silverado 1500.

2.      Prior to purchasing his 2014 GMC Sierra, Plaintiff owned a trailer with a "dry weight" or Unloaded Vehicle Weight ("UVW") of around 5,000 pounds, which he used to haul a golf cart weighing approximately 1,000 pounds. Shortly after he purchased his 2014 GMC Sierra—a vehicle with supposedly "class leading trailering" capability according to Defendants, as explained below—and eager to use his new pickup to its full potential, Plaintiff decided it was time to upgrade his toy-hauler trailer. Relying on the advertised 8,800-pound towing capacity of his 2014 GMC Sierra, Plaintiff and his wife invested thousands of dollars in the purchase of a new

---

[1] Gross Combined Weight Rating is the total allowable weight of the completely loaded vehicle and trailer, including any passengers, cargo, equipment, and conversions.

1  trailer with an UVW of 6,700 pounds. Combined with the 1,000 pounds in cargo he planned to

2  carry in the trailer, the 7,700 pound Gross Trailer Weight was well within his 2014 GMC Sierra's

3  advertised 8,800-pound towing capacity.

4         3.     Then, in September 2014, GM sent a letter to Plaintiff and Class Members

5  informing them that the advertised maximum trailer weight and Gross Vehicle Weight Rating

6  values ("Towing Capacity") for the 2014 GMC Sierra and the 2014 Chevrolet Silverado were

7  inaccurate. Included with the letter was an owner's manual supplement that revised downward—

8  by as much as 2,000 pounds and thereby reducing its capabilities by more than 20%—the Towing

9  Capacity of Class Vehicles. According to Defendants' new disclosure, Plaintiff's 2014 GMC

10  Sierra was capable of safely towing just 6,700 pounds and had a Gross Combined Weight Rating

11  of 12,000 pounds—far from the 8,800 pound towing capacity and 14,400-pound GCWR that

12  Defendants used to advertise and sell the vehicles to Plaintiff and Class Members.

13         4.     This Towing Capacity reduction followed uniform and pervasive representations to

14  the contrary from Defendant to Plaintiff and Class Members. Prior to GM's precipitous

15  recalculation, GM expressly and repeatedly touted the Towing Capacity of Class Vehicles, and its

16  representatives confirmed that Towing Capacity is a material, and often dispositive, consideration

17  for pickup truck consumers: "trailer towing is number 1 to truck owners…. It's just the key

18  element."[2]

19         5.     Had Plaintiff and Class Members known the 2014 GMC Sierra's and the 2014

20  Chevrolet Silverado's actual towing capability at the time of purchase, and the safety hazard posed

21  by towing loads in excess of a vehicle's capacity, they would not have bought the Class Vehicles

22  or would have paid much less for them. As such, Plaintiff and Class Members have not received

23  the value of their bargain in purchasing their Class Vehicles and have suffered damage.

**<ins>JURISDICTION AND VENUE</ins>**

24

25         6.     This Court has personal jurisdiction over Defendants because Defendants have

26  conducted and continue to conduct business in the State of California, and because Defendants

27

28  
_____

[2] *See* Chevrolet, *Truck Towing Capabilities: 2014 Silverado*, YOUTUBE (Mar. 26, 2014), https://www.youtube.com/watch?v=IRXK35dPXbE&feature=youtu.be.

1     have committed the acts and omissions complained of herein in the State of California.

2     7.     Venue as to Defendants is also proper in this judicial district. A significant number

3 of Class Vehicles and other GM automobiles are sold in this district, Defendants have dealerships

4 in this district, and much of Defendants' acts and omissions complained of herein occurred in Los

5 Angeles County, California.

6     8.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28

7 U.S.C. § 1332(d). Upon information and belief, there are well over 100 members in the proposed

8 class; the aggregated claims of the individual class members exceed the sum or value of

9 $5,000,000, exclusive of interest and costs; and this is a class action in which Defendants and class

10 members are citizens of different states.

11                                        **PARTIES**

12     9.     Plaintiff Richard Quintero is a California citizen who resides in Chino, California.

13 In June 2013, Plaintiff purchased a 2014 GMC Sierra 1500 Crew Cab 5.3L V8 pickup truck from

14 Mark Christopher Auto Center in Ontario, California. Plaintiff purchased his 2014 GMC Sierra

15 primarily for personal, family, or household use, and paid approximately $46,844.42. The vehicle

16 was manufactured, sold, distributed, advertised, marketed, and warranted by GM, and bears

17 Vehicle Identification No. 3GTP1VEC1EG107749.

18     10.     Defendant General Motors Company ("GM") is a Delaware corporation with its

19 principal place of business in Michigan. GM manufactured, marketed, distributed, and warranted

20 the mechanically identical 2014 model year GMC Sierra 1500 and Chevrolet Silverado 1500. GM

21 designs, builds, markets, and sells the Class Vehicles throughout the United States, including

22 California.

23     11.     Plaintiff is unaware of the true names and capacities of individuals and/or entities

24 sued herein under the fictitious names DOES 1 through 10, inclusive, or, to the extent that the

25 names of such individuals or entities may be known to Plaintiff, Plaintiff does not know whether a

26 viable cause of action lies as against such individuals or entities, or Plaintiff is unable to allege the

27 elements of such a cause of action at this time, prior to discovery. Plaintiff reserves the right to

28 amend the instant Complaint to allege the true names and capacities of such fictitiously-named

CLASS ACTION COMPLAINT

1  defendants when the same become known or when it has been ascertained with reasonable

2  certainty that a cause of action hereunder can be satisfactorily stated and maintained against them.

3      12.     Plaintiff is informed and believes, and based upon such information and belief

4  alleges, that each of the Defendants named in this Complaint, including DOES 1 through 10,

5  inclusive, is, and at all times relevant hereto was, the agent, servant, employee, and/or joint

6  venturer of each of the other Defendants and that each Defendant was acting within the course and

7  scope of his, her, or its authority as an agent, servant, employee, and/or joint venturer.

8  Consequently, all Defendants are jointly and severally liable to Plaintiff and Class Members for

9  the damages sustained as alleged herein.

10     13.     As used herein, the term "Defendants" shall mean to refer, unless otherwise

11  specified, collectively to Defendants GM, and DOES 1 through 10, inclusive.

12                          **SUBSTANTIVE ALLEGATIONS**

13     14.     Towing capacity is a central feature of truck advertising campaigns, and has been a

14  major point of competition among top manufacturers like GM in recent years. To that end,

15  manufacturers set towing capacity targets based on customer research and competitive needs.

16     15.     Mired in bankruptcy, a government bailout, and controversy surrounding the

17  deadly effects of an ignition-switch defect in its smaller cars, GM had ceded significant market

18  share to Ford and Dodge trucks in the years leading up to the 2014 Sierra's release. GM was

19  counting on the mechanically identical redesigned 2014 Chevy Silverado and 2014 GMC Sierra to

20  help claw back market share and to prove to the world that GM—having just emerged from

21  government ownership—could stand on its own.

22     16.     What's more, GM had invested significant resources into redesigning its 2014

23  Sierra and needed to recoup costs. "Our engineers and designers left nothing on the table when

24  developing this latest Sierra pickup," said Tony DiSalle, vice president of GMC Marketing. All

25  the while, GM continued to reassure potential buyers that, "These trucks have all the power and

26  capability that's expected in today's market."

27     17.     Playing to the "power and capability" expected by consumers, Towing Capacity

28  was a central feature of the marketing materials for the 2014 GMC Sierra, which GM North

1   America President Mark Reuss described as "work horses" designed to maximize power and

2   towing capacity. To that end, representations regarding the 2014 GMC Sierra's exceptional towing

3   capacity appeared in advertising available on websites, in print at dealerships, and in television

4   commercials:

5             a.        2014 GMC Sierra Brochure: "Pull up to 12,000 lbs. Leave worry behind.

6   The 2014 Sierra is all about strength, thanks to meticulous attention to detail throughout its

7   drivetrain, suspension and body structure. It's strong enough to achieve a best-in-class standard V-

8   6 engine trailer weight rating of up to 7600 lbs. On models with available 6.2L V-8 and Max

9   Trailering Package, it produces a class-leading rating of up to 12,000 lbs., while the 5.3L V-8

10  comes in at 11,500 lbs. and Denali at 9,800 lbs. Before Sierra is even in motion, systems are

11  monitoring conditions and preparing the truck to overachieve."

12            b.        2014 Silverado Brochure: "[A]vailable class leading trailering," with a

13  footnote stating "[w]ith 2WD Double Cab, available 5.3L V-8 engine and Max Trailering Package

14  (available Fall 2013)."

15            c.        2014 Silverado television advertisement titled "Truck Towing Capabilities

16  – 2014 Silverado" in which GMC Trailer Engineer, Robert Krause, states: "Trailer towing is

17  number 1 to truck owners…. It's just the key element." The following is then displayed: "Best in

18  Class Towing. Up to 12,000 lbs.," followed by, in smaller letters at the bottom of the screen,

19  "2WD Double or Crew Cab with available 6.2L V8 engine and Max Trailer Package. Maximum

20  trailer weight ratings are calculated assuming a properly equipped base vehicle, plus driver. See

21  dealer for details. Class is half-ton full-size pick-ups." *See* Chevrolet, *Truck Towing Capabilities:*

22  *2014 Silverado*, YOUTUBE (Mar. 26, 2014),

23  https://www.youtube.com/watch?v=IRXK35dPXbE&feature=youtu.be.

24            d.        2014 Silverado TV Ad titled "All-New 2014 Silverado 1500 – Over 13

25  Million Miles of Total Testing," states that the truck has "Best in Class Towing." *See* Chevrolet,

26  *All-New 2014 Silverado Testing*, YOUTUBE (Dec. 13, 2014),

27  https://www.youtube.com/watch?v=Cg93XMNjDrE.

28  */ / /*

18.     To facilitate the success of the 2014 GMC Sierra's launch, GM also released its first free iOS (iPhone and iPad) app, which prominently featured the 2014 GMC Sierra and was "designed to give GMC customers a better understanding of trailering techniques and capabilities" and to help "identify the appropriate GMC model for specific trailering needs." In other words, the app was intended to drive sales of the 2014 GMC Sierra and other GMC trucks. Consumers could access towing capacity information either by selecting a specific GMC model or by entering their trailering needs to identify the right GMC model for the job. Like other marketing materials, as well as the Owners' Manual, the GMC Trailering app included incorrect and misleading information regarding the 2014 GMC Sierra's towing capacity.

19.     The 2014 GMC Sierra quickly became GM's best-selling model of vehicle, helping to propel the automaker to its highest sales since 2007. In July 2013, GMC Sierra sales were up by 53% over July 2012, with an average of just 14 "days to turn" from delivery to sale, compared to competitors' 76-day average. Indeed, the truck brand emerged as GM's healthiest since the automaker's exit from bankruptcy, and began commanding the biggest jumps in transaction prices of any GM brand. In fact, a few months into its release, GM was able to raise the prices of its 2014 GMC Sierra and Chevy Silverado trucks while maintaining a steady increase in sales.

20.     Unfortunately for Plaintiff and Class Members, GM's marketing claims and technical specifications regarding the 2014 GMC Sierra's Towing Capacity grossly overstated the vehicle's actual ability to safely and reliably trailer heavy loads. In September 2014, Jim Moloney, GM's then General Director of Customer and Relationship Services, sent Plaintiff and Class Members a letter ("Notice Letter") advising them of the Class Vehicles' actual Towing Capacity. The Notice Letter also stated that exceeding the new, lower, load capacity than was originally advertised could result in harm to the Class Vehicle. A copy of the Notice Letter is attached as **Exhibit 1** and is incorporated herein as if set forth in full.

21.     The Notice Letter enclosed a supplement to the original Owner's Manual (relevant pages of which are attached hereto as **Exhibit 2** and which are incorporated herein as if set forth in full) that showed reductions in Class Vehicles' maximum trailer weight and the Gross Vehicle Weight Rating by, as in Plaintiff's case, as much as 2,000 pounds.

22. A comparison of the Advertised versus Actual towing capacity specifications for the 2014 GMC Sierra and 2014 Chevrolet Silverado is as follows:

| Vehicle | Axle Ratio | *Advertised* Max. Trailer Weight | *Actual* Max. Trailer Weight | *Advertised* GCWR* | *Actual* GCWR* |
|---|---|---|---|---|---|
| 1500 Series 2WD Regular Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 9,300 lbs. | 7,200 lbs. | 14,000 lbs. | 12,000 lbs. |
| 1500 Series 2WD Extended Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 8,900 lbs. | 6,900 lbs. | 14,000 lbs. | 12,000 lbs. |
| 6.2L V8 | 3.73 | 12,000 lbs. | 12,000 lbs. | 17,700 lbs. | 17,500 lbs. |
| 1500 Series 2WD Crew Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 8,700 lbs. | 6,700 lbs. | 14,000 lbs. | 12,000 lbs. |
| 6.2L V8 | 3.73 | 12,000 lbs. | 12,000 lbs. | 17,700 lbs. | 17,500 lbs. |
| 1500 Series 2WD Crew Cab Short Box | | | | | |
| **5.3L V8[3]** | **3.08** | **8,800 lbs.** | **6,800 lbs.** | **14,000 lbs.** | **12,000 lbs.** |
| 6.2L V8 | 3.73 | 12,000 lbs. | 12,000 lbs. | 17,700 lbs. | 17,500 lbs. |
| 1500 Series 2WD Regular Cab Long Box | | | | | |
| 5.3L V8 | 3.08 | 9,200 lbs. | 7,200 lbs. | 14,000 lbs. | 12,000 lbs. |
| 1500 Series 4WD Regular Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 9,100 lbs. | 7,100 lbs. | 14,000 lbs. | 12,000 lbs. |
| 1500 Series 4WD Extended Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 8,600 lbs. | 6,600 lbs. | 14,000 lbs. | 12,000 lbs. |
| 6.2L V8 | 3.73 | 12,000 lbs. | 11,800 lbs. | 17,700 lbs. | 17,500 lbs. |
| 1500 Series 4WD Crew Cab Standard Box | | | | | |
| 5.3L V8 | 3.08 | 8,500 lbs. | 6,500 lbs. | 14,000 lbs. | 12,000 lbs. |
| 6.2L V8 | 3.73 | 12,000 lbs. | 11,700 lbs. | 17,700 lbs. | 17,500 lbs. |

[3] Plaintiff's GMC Sierra 1500 fell into this category.

23.     Despite the admission within the Notice Letter that "[u]se of higher than recommended maximum trailer weight could result in a powertrain cooling system overheat condition if operating the vehicle under certain high ambient temperature and road grade conditions"—a significant safety concern—and the warning that "GCWR for the vehicle should not be exceeded," GM did not issue a recall of Class Vehicles or even reprint the complete owners' manual to ensure accurate information remained with the vehicle at all times. Rather, GM simply enclosed a one-page insert and left it up to Plaintiff and Class Members to open the letter, review its contents, and place the insert at the appropriate place within the existing manual.

24.     Whereas the 2014 GMC Sierra and 2014 Chevrolet Silverado first went on sale in May of 2013, GM continued to provide false and misleading Towing Capacity statistics for the Class Vehicles through at least September 2014, and these inaccurate figures remained on the GMC website through at least September 2014.

25.     GM intended for potential buyers to rely on its Towing Capacity information in making the decision to purchase a Class Vehicle. In fact, GMC's Vice President of Marketing, Tony DiSalle, noted the importance of Towing Capacity when the 2014 Sierra's towing specifications were released: "Trailering is a fundamental capability that customers invest in and depend on when they purchase a truck."[4]

26.     Indeed, accurate information regarding towing capacity has been a focal point of the automotive industry for some time. In 2008, the Society of Automotive Engineers' (SAE) first published its standard "Performance Requirements for Determining Tow-Vehicle Gross Combination Weight Rating and Trailer Weight Rating," known as J2807. The SAE J2807 categorizes towing performance into three measurable attributes: climbing, acceleration, and launching. Each category has specified performance standards that must be met before a manufacturer can advertise the truck's ability to handle a given amount of weight. Despite knowledge of the importance of providing accurate Towing Capacity statistics to potential buyers,

---

[4] Press Release, GMC News, Sierra Trailering Tech Enhances Safety and Performance (May 31, 2013), *available at* http://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2013/May/0531-gmc-sierra-trailering.html.

1    GM reneged on its December 2011 agreement to adopt SAE J2807 by the 2013 model year.

2        27.    Rather than follow the SAE J2807 standard, GM developed and followed its own

3    towing capacity testing regimens, which were designed to manipulate Towing Capacity figures in

4    order to maintain and improve its market share, at the cost of consumers. In almost all cases, the

5    SAE J2807 standard leads to lower Towing Capacity numbers than the tests developed by GM to

6    fuel its marketing campaigns.

7        28.    Not only did GM refuse to adopt the SAE J2807 standard for fear that it might

8    reduce Towing Capacity numbers on Class Vehicles, it manipulated the outcomes of its own

9    internal testing to produce larger Towing Capacity numbers even though it knew it was not testing

10   under real-world conditions. For example, GM skewed maximum payload results by removing

11   heavy items from its trucks, such as the rear bumper, in order to lower vehicles' curb weight.

12       29.    Most tellingly, GM spokesperson Tom Wilkinson admitted that the company did in

13   fact conduct SAE J2807 standard testing, but chose instead to publish the inflated results of its

14   own internal testing protocols. In discussing GM's refusal to adopt the standard testing for

15   marketing its 2013 line of trucks, Wilkinson admitted: "We already validate the trucks to [the

16   J2807 standard]. It's just a matter of adjusting the numbers."

17       30.    In other words, GM knew, or should have known, at the time it made the

18   representations regarding the original Towing Capacity statistics that these statements were untrue

19   or misleading. GM also knew its statements were material, and intended for Plaintiff and Class

20   Members to rely on its representations regarding Towing Capacity when deciding to enter into

21   contracts to purchase Class Vehicles. If Plaintiff and Class Members had known the true facts,

22   they would not have purchased the Class Vehicles or they would have paid much less for them and

23   as a direct result of Defendants' action, have suffered damage.

24                                  **CLASS ALLEGATIONS**

25       31.    As detailed in the individual counts below, Plaintiff brings this action on behalf of

26   himself and all similarly situated consumers, pursuant to Federal Rule of Civil Procedure 23.

27   Plaintiff seeks to represent the following class and sub-class under Rule 23(b)(3) and Rule

28   23(c)(4), defined as follows:

A. The Nationwide Class

All persons who purchased or leased a 2014 model year GMC Sierra and/or a Chevrolet Silverado 1500 Series pickup truck in the United States on or before September 30, 2014.

B. The California Sub-Class:

All persons who purchased or leased a 2014 model year GMC Sierra and/or a Chevrolet Silverado 1500 Series pickup truck in California on or before September 30, 2014.

32.     Excluded from the proposed Nationwide Class and the proposed California Sub-Class are any entity in which GM has a controlling interest, and officers or directors of GM; any affiliate, parent, or subsidiary of GM; any officer, director, or employee of GM; any successor or assignee of GM; Plaintiff's counsel and anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and any members of their respective staffs, as well as the spouses of such persons; and anyone who purchased a Class Vehicle for the purpose of resale.

33.     At all relevant times, Plaintiff has been within the Nationwide Class and within the California Sub-Class.

34.     **Numerosity**.  The members of the Nationwide Class and the California Sub-Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that there are at least thousands of purchasers in the Nationwide Class and the California Sub-Class.  Inasmuch as the Class Members may be identified through business records regularly maintained by GM and its employees and agents, and through the media, the number and identities of Class Members can be ascertained.

35.     **Existence and Predominance of Common Questions**.  Common questions of law and fact exist as to all members of the proposed Nationwide Class and the California Sub-Class and predominate over questions affecting only individual Class Members, and answers to these common questions are apt to drive the resolution of this litigation.

36.     Those common questions applicable to all classes include:

a.      Whether the Class Vehicles achieve Towing Capacity materially lower than that originally advertised and represented by Defendants;

11

1            b.      Whether Defendants' statements regarding Towing Capacity of Class

2    Vehicles made materially false, unfair, or deceptive statements regarding the expected Towing

3    Capacity of the Class Vehicles;

4            c.      Whether Defendants knew or should have known that its statements

5    regarding Towing Capacity of Class Vehicles were materially false, unfair, or deceptive;

6            d.      Whether Defendants' statements regarding Towing Capacity of Class

7    Vehicles were material;

8            e.      Whether Defendants violated 15 U.S.C. section 2301, *et seq.*;

9            f.      Whether as a result of Defendants' actions and inactions Plaintiff and the

10   Class were damaged; and

11           g.      Whether Defendants should be financially responsible to Class Members for

12   restitution and/or damages arising out of its false, unfair, and deceptive statements regarding

13   expected Towing Capacity of Class Vehicles.

14        37.      Additional common questions applicable to the California Sub-Class include:

15           a.      Whether Defendants violated California Business and Professions Code

16   section 17200, *et seq.*;

17           b.      Whether Defendants violated California Business and Professions Code

18   section 17500;

19           c.      Whether Plaintiff and the Class suffered harm as a result of Defendants'

20   violations of the California Business and Professions Code;

21           d.      Whether Plaintiff and the Class are entitled to restitution under the

22   California Business and Professions Code and whether an injunction should be issued;

23           e.      Whether Defendants violated California Civil Code section 1750, *et seq.*;

24           f.      Whether Plaintiff and the Class suffered harm as a result of Defendant's

25   violation of the California Civil Code; and

26           g.      Whether an injunction should be issued under the California Business and

27   Professions and Civil Codes.

28   / / /

CLASS ACTION COMPLAINT

38.     **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and Class Members were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendants. Plaintiff has no interests antagonistic to those of Class Members, and Defendants have no defenses unique to Plaintiff.

39.     **Adequacy**. Plaintiff is an adequate representative of the proposed Nationwide Class and the California Sub-Class because his interests do not conflict with Class Members' interests, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

40.     **Superiority and Predominance**. A class action is superior to other available means for the fair and efficient adjudication of this dispute because Defendants have acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive or corresponding declaratory relief on a class-wide basis. In addition, without class certification, the prosecution of separation actions by individual class members would risk:

a.     Inconsistent or varying adjudications with respect to individual members, which would establish incompatible standards of conduct for Defendants;

b.     Adjudication with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests; and

c.     Unnecessary delay and expense to all parties and to the courts.

41.     **Notice**. Plaintiff contemplates that the nature of the notice to be provided to Class Members can be in the form of e-mail, mail, and published notice.

42.     Plaintiff does not anticipate any difficulty in the management of this litigation.

### FIRST CAUSE OF ACTION
**(By Plaintiff and the Nationwide Class Against All Defendants for Breach of Express Warranty)**

43.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 42.

/ / /

44.     Plaintiff brings this cause of action against Defendants on behalf of himself and members of the Nationwide Class because materially identical common laws are in effect in states that are part of the proposed Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of himself and members of the California Sub-Class only.

45.     GM sold the Class Vehicles warranting that the Class Vehicles were of a certain quality and standard which they did not meet. In particular, GM affirmed, promised, and/or described the Class Vehicles as being capable of safely and reliably towing trailers and cargo of a certain weight.

46.     As set forth above, GM's various advertisements and the Owner's Manual for Class Vehicles affirmed and described the Class Vehicles as being capable of meeting certain Max. Trailer Weight and Gross Combined Weight Ratings, i.e. Towing Capacity.

47.     Those affirmations/descriptions of the Towing Capacity of Class Vehicles formed part of the basis of Plaintiff's and Class Members' bargain in purchasing the Class Vehicles.

48.     GM breached this warranty by selling Class Vehicles that were not capable of safely and reliably towing trailers and cargo of the stated weight, and in fact had a Towing Capacity up to 2,000 pounds below the capacity originally described to Plaintiff and Class Members.

49.     Plaintiff and Class Members were harmed by GM's breach of warranty in that had they known the Class Vehicles could not perform as warranted they would have either not purchased the Class Vehicles or would have paid a lower price for the Class Vehicles.

50.     GM's breach of its express warranty regarding the Towing Capacity of Class Vehicles was a substantial factor in causing Plaintiff and Class Members to suffer economic damages.

51.     GM's misrepresentation regarding the Towing Capacity of Class Vehicles was material to Plaintiff and Class Members, and would have been material to a reasonable consumer.

52.     Plaintiff, on behalf of himself and on behalf of Class Members, seeks actual damages in an amount to be stated according to proof at trial.

/ / /

14

**SECOND CAUSE OF ACTION**
**(By Plaintiff and the Nationwide Class Against All Defendants**
**for Violation of 15 U.S.C. section 2301, *et seq.*)**

53.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 52.

54.     Plaintiff brings this cause of action against Defendants on behalf of himself and members of the Nationwide Class.

55.     The Class Vehicles are consumer products as defined in 15 U.S.C. § 2301(6).

56.     Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

57.     GM is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

58.     GM sold the Class Vehicles warranting that the Class Vehicles were of a certain quality and standard which they did not meet. In particular, GM sold the Class Vehicles with a warranty that the vehicles were capable of safely and reliably towing trailers and cargo of a certain weight.

59.     GM breached this warranty by selling Class Vehicles that were not capable of safely and reliably towing trailers and cargo of the stated weight, and in fact had a Towing Capacity up to 2,000 pounds below the capacity originally stated to Plaintiff and Class Members.

60.     Defendants' breach of its express warranties regarding the Towing Capacity of Class Vehicles was a substantial factor in causing Plaintiff and Class Members to suffer economic damages.

61.     Plaintiff, on behalf of himself and on behalf of Class Members, seeks actual damages in an amount to be stated according to proof at trial.

**THIRD CAUSE OF ACTION**
**(By Plaintiff and the Nationwide Class Against All Defendants**
**for Negligent Misrepresentation)**

62.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 42.

63.     Plaintiff brings this cause of action against Defendants on behalf of himself and members of the Nationwide Class because materially identical common laws are in effect in states that are part of the proposed Nationwide Class. In the alternative, Plaintiff brings this cause of

1  action on behalf of himself and members of the California Sub-Class only.

2        64.    Defendants had a duty to provide honest and accurate information to its ultimate

3  customers, Plaintiff and Class Members, so that they could make informed decisions on the

4  substantial purchase of an automobile which, after purchasing a home, is the largest single

5  purchase normally made by the public.

6        65.    Defendants made untrue representations to Plaintiff and Class Members concerning

7  the Towing Capacity of Class Vehicles, as alleged herein.

8        66.    Defendants knew, or in the exercise of reasonable diligence should have known,

9  that the Towing Capacity representations were false at the time it made them, yet intended for

10  Plaintiff and Class Members to rely on these representations.

11        67.    Defendants knew, or in the exercise of reasonable diligence should have known,

12  that a reasonable consumer would be misled by Defendants' untrue representations.

13        68.    Plaintiff and the Class Members reasonably and justifiably relied on GM's

14  misrepresentations, and suffered economic damages as a result.

15        69.    Plaintiff, on behalf of himself and on behalf of Class Members, seeks actual

16  damages in an amount to be stated according to proof at trial.

17                                **FOURTH CAUSE OF ACTION**
             **(By Plaintiff and the California Sub-Class Against All Defendants**

18    **for Violation of California Business & Professions Code section 17200, *et seq.*)**

19        70.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1

20  through 42.

21        71.    Plaintiff brings this cause of action on behalf of himself and members of the

22  California Sub-Class against Defendants.

23        72.    California Business and Professions Code section 17200, the Unfair Competition

24  Law prohibits, among other things, any "unfair" or "unlawful" business act or practice.

25        73.    Defendants have engaged in unlawful and unfair business acts and practices in

26  violation of consumer rights under the Unfair Competition Law, as alleged herein. Defendants'

27  deceptive, untrue, and misleading advertising is described throughout this Complaint and includes

28  misrepresenting and falsely advertising to Plaintiff and Class Members the Towing Capacity of the

1    Class Vehicles as is proven by the letter ultimately sent to consumers setting forth the true Towing

2    Capacity of the Class Vehicles.

3          74.    Defendants violated the "unfair" prong of the Unfair Competition Law because

4    Defendants'  misrepresentations and omissions regarding the Towing Capacity of Class Vehicles

5    offended established public policy regarding truthful advertising, caused harm to consumers,

6    impaired competition within the automobile industry, and prevented Plaintiff and Class Members

7    from making fully informed decisions about whether to purchase a Class Vehicle and about what

8    price to pay for a Class Vehicle. The harm suffered by Plaintiff and the Class greatly outweighs

9    any benefits associated with Defendants' practices as complained of herein.

10         75.    Defendants violated the "unlawful" prong of the Unfair Competition Law because

11   Defendants' misrepresentations and omissions regarding the Towing Capacity of Class Vehicles

12   violated California law, including but not limited to California's False Advertising Law (Cal. Bus.

13   & Prof. Code § 17500), the Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*.) and

14   15 U.S.C. § 230, *et seq.*, as set forth herein.

15         76.    Plaintiff and members of the California Sub-Class suffered an injury in fact,

16   including the loss of money or property, as a result of Defendants' unfair, unlawful or deceptive

17   practices. In purchasing his Class Vehicle, Plaintiff relied on the misrepresentations and/or

18   omissions of Defendants with respect to the towing capacity as set forth herein. Defendants'

19   representations turned out not to be true because the towing capacity was overstated and had

20   Plaintiff known this, he would not have purchased his vehicle or paid as much for it.

21         77.    Plaintiff overpaid for his vehicle and did not receive the benefit of his bargain. One

22   way to partially measure this overpayment and lost benefit of the bargain at the time his purchase

23   occurred is by the value consumers place on the vehicles now that the Towing Capacity has been

24   downgraded. This decline in value partially measures Plaintiff's overpayment at the time of sale.

25         78.    Plaintiff has standing under the Unfair Competition Law because he has suffered

26   injury in fact, and has lost money or property, as a result of Defendants' unfair, unlawful, and/or

27   deceptive practices as outlined above.

28   / / /

79.     Plaintiff, on behalf of himself and on behalf of the California Sub-Class, seeks restitution, injunctive relief, and all other allowable relief under Business and Professions Code sections 17200 and 17203.

**FIFTH CAUSE OF ACTION**
**(By Plaintiff and the California Sub-Class Against All Defendants**
**for Violation of California Business & Professions Code section 17500)**

80.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 42, above.

81.     Plaintiff brings this cause of action on behalf of himself and all members of the California Sub-Class against Defendants.

82.     California Business and Professions Code section 17500 states: "It is unlawful for any . . .  corporation . . .  with intent directly or indirectly to dispose of real or personal property . . .  to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . .  from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . .  or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

83.     Defendants  engaged in advertising and marketing to the public and offered Class Vehicles for sale throughout California.

84.     Defendants caused to be made or disseminated statements throughout California regarding the Towing Capacity of Class Vehicles with intent to directly or indirectly induce consumers like Plaintiff and Class Members to purchase Class Vehicles.

85.     Defendants' statements regarding the Towing Capacity of Class Vehicles were false, misleading, and likely to deceive the public and/or have deceived the public by falsely representing the characteristics of Class Vehicles, as set forth above.

86.     At the time Defendants made and disseminated the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and Defendants acted in violation of California Business and Professions Code section 17500.

/ / /

18

87. Defendants' statements regarding the Towing Capacity of Class Vehicles were material to Plaintiff's and Class Members' decision to purchase the vehicles, and Plaintiff and Class Members reasonably relied on Defendants' statements. Had Plaintiff and Class Members known the true Towing Capacity, they would not have purchased the Class Vehicles or they would have paid much less for them.

88. Plaintiffs and members of the California Sub-Class suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful or deceptive practices. In purchasing his Class Vehicle Plaintiff relied on the misrepresentations and/or omissions of Defendants with respect to the towing capacity as set forth herein. Defendants' representations turned out not to be true because the Towing Capacity was overstated and had Plaintiff known this, he would not have purchased his vehicle or paid as much for it.

89. Plaintiff overpaid for his vehicle and did not receive the benefit of his bargain. One way to partially measure this overpayment and lost benefit of the bargain at the time his purchase occurred is by the value consumers place on the vehicles now that the towing capacity has been downgraded. This decline in value partially measures Plaintiff's overpayment at the time of sale.

90. Plaintiff, on behalf of himself and on behalf of the California Sub-Class, seeks restitution, injunctive relief, and all other allowable relief under Business and Professions Code section 17500.

### SIXTH CAUSE OF ACTION
**(By Plaintiff and the California Sub-Class Against All Defendants for Violation of California Civil Code section 1750, *et seq.*)**

91. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 42.

92. Plaintiff brings this cause of action on behalf of himself and all members of the California Sub-Class against Defendants, seeking injunctive relief only.

93. Plaintiff and Class Members are "consumers" within the meaning of California Civil Code section 1761(d).

94. GM is a "person" within the meaning of California Civil Code section 1761(c).

/ / /

19

95.     Plaintiff's and each Class Member's purchase of a Class Vehicle constitutes a "transaction" within the meaning of California Civil Code section 1761(e).

96.     The Class Vehicles are "goods" within the meaning of California Civil Code section 1761(a).

97.     Defendants' statements regarding the Towing Capacity of Class Vehicles violated the Consumers Legal Remedies Act, Cal. Civ. Code section 1750, *et seq.*, in at least the following respects:

        a.     it represented that Class Vehicles had characteristics and benefits (*i.e.*, towing capabilities) that they did not actually have, in violation of Section 1770(a)(5);

        b.     it represented that Class Vehicles are of a particular standard, quality, or grade (*i.e.*, of a particular towing capacity) that they are not, in violation of Section 1770(a)(7); and

        c.     it advertised Class Vehicles with an intent not to sell them as advertised (*i.e.*, with inflated Towing Capacity), in violation of Section 1770(a)(9).

98.     Defendants falsely represented material facts regarding Class Vehicles' Towing Capacity, information that is relied upon by consumers, including Plaintiff and Class Members, in making purchasing decisions.

99.     Defendants' statements regarding the Towing Capacity of Class Vehicles materially and adversely affected the purchasing decisions of Plaintiff and Class Members. Had Plaintiff and Class Members known the true Towing Capacity, they would not have purchased the Class Vehicles or they would have paid much less for them.

100.     Defendants' affirmative misrepresentations and material omissions, and Defendants' publication of these material inaccuracies regarding the Towing Capacity of Class Vehicles constitute unfair, deceptive, and misleading business practices in violation of California Civil Code section 1770(a).

101.     Plaintiff, on behalf of himself and on behalf of the California Sub-Class, seeks injunctive relief, only, under California Civil Code section 1780.

/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

a.    For an order certifying the proposed Nationwide Class and the proposed California Sub-Class, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel of record as Class Counsel;

b.    For an injunction requiring Defendants to issue a recall of all Class Vehicles to correct its misrepresentations and material omissions in the Owner's Manual, and to disseminate a corrective informational campaign to ensure all owners and lessees are aware of the true Towing Capacity of Class Vehicles;

c.    As to the California Sub-Class, for an award of restitution;

d.    For actual damages as to the First, Second, and Third Causes of Action;

e.    For an award of attorneys' fees and costs, as allowed by law;

f.    For pre-judgment and post-judgment interest to the extent allowed by law; and

g.    For such other and further relief as the Court deems appropriate.

DATED:  December 11, 2015              Respectfully submitted,

BOUCHER LLP

By:  _____
        Raymond P. Boucher
        Maria L. Weitz

MORGAN & MORGAN COMPLEX
LITIGATION GROUP
        John A. Yanchunis
        Marcio W. Valladares
        Patrick A. Barthle II

KIESEL LAW
        Paul R. Kiesel
        Jeffrey A. Koncius
        Mariana Aroditis

*Attorneys for Plaintiff Richard Quintero*
*and the Proposed Class*

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all claims so triable.

DATED:  December 11, 2015

Respectfully submitted,

BOUCHER LLP

By: _____

    Raymond P. Boucher
    Maria L. Weitz

MORGAN & MORGAN COMPLEX
LITIGATION GROUP
    John A. Yanchunis
    Marcio W. Valladares
    Patrick A. Barthle II

KIESEL LAW
    Paul R. Kiesel
    Jeffrey A. Koncius
    Mariana Aroditis

*Attorneys for Plaintiff Richard Quintero
and the Proposed Class*

22

CLASS ACTION COMPLAINT